UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| SUSAN CASEY, | ) |
| Plaintiff | ) ) ) ) |
| vs. | ) ) Case No. 4:14-cv-00595-HGD |
| CITY OF GLENCOE, ALABAMA, | ) ) ) |
| Defendant | ) |

# MEMORANDUM OPINION

The above-entitled civil action is before the court on the Motion for Summary Judgment filed by defendant, City of Glencoe, Alabama. (Doc. 27). The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 38). Plaintiff has filed a response to the motion for summary judgment (Doc. 33), and defendant has filed a reply (Doc. 36). The matter is now ready for disposition.

### PROCEDURAL BACKGROUND

Plaintiff, Susan Casey, filed the complaint in this action on April 1, 2014, against the City of Glencoe, Alabama, and Charles Gilchrist. (Doc. 1). She asserts claims of interference with her rights under the Family Medical Leave Act (FMLA)

and retaliation for assertion of her FMLA rights. She also asserts a separate state law claim for mental and emotional distress, based on the alleged failure of the City of Glencoe to "permit[ ] her federally protected right under FMLA" and the fact that she "was informed that she would not be re-appointed to her position the day after she returned to work after hospitalization and was recuperating from a serious medical condition." (*Id.* at ¶ 42). Defendant Gilchrist filed a Motion for Judgment on the Pleadings (Doc. 16). The undersigned entered a report and recommendation, recommending that the motion be granted and that Gilchrist be dismissed with prejudice as a defendant. (Doc. 25). The report and recommendation was adopted and accepted by the district court, without objection. (Doc. 26).

## SUMMARY JUDGMENT STANDARD

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P. Summary judgment "shall [be granted] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106

S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Id.* at 255, 106 S.Ct. at 2514, *citing Adickes v. S.*

*H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).  However, "[a] court need not permit a case to go to a jury when the inferences that are drawn from the evidence and upon which the non-movant relies are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 593, 106 S.Ct. at 1359.  It is, therefore, under this standard that the court must determine whether the plaintiff can meet her burden of coming forward with sufficient evidence as to each material element of her claim sufficient to permit a reasonable jury to find in her favor.

## FACTUAL BACKGROUND

The court finds the following undisputed facts.  Where any facts are disputed, they are viewed in the light most favorable to plaintiff.

The City of Glencoe is a municipal corporation that had more than 4000 and less than 6000 inhabitants at all times relevant to this action. (Doc. 28-2: Blackerby Aff., at ¶¶ 6-7 and Ex. 1).  The City of Glencoe is recognized as a separate governmental organization by the U.S. Census Bureau. (*Id*. at ¶ 7 and Ex.1).  The City of Glencoe does not have a civil service board. (*Id*. at ¶ 10).  At all relevant times, the City of Glencoe has had a proper FMLA notice from the U.S. Government Printing Office (WH Publication 1420, entitled "Your Rights under the Family and Medical Leave Act of 1993") prominently posted at city hall, detailing the Act's

provisions (including enforcement) and where to obtain additional information. (*Id.* at ¶ 8 and Ex. 2). The Personnel Handbook of the City of Glencoe, adopted in 2009, includes FMLA eligibility, notice, and certification provisions. (*Id.* at ¶ 9). Plaintiff was provided with a copy of the Personnel Handbook. The Personnel Handbook specifically states that "The Family Medical Leave Act (FMLA) of 1993 requires cities with fifty (50) or more employees to offer up to twelve (12) weeks of unpaid, job-protected leave to eligible employees for certain family and medical reasons." (Doc. 33-1 at 26). The Personnel Handbook also states that an employee must provide the mayor with 30 days' written notice of the need for foreseeable or predictable need for FMLA leave, or if emergency circumstances prevent 30 days' written notice, the employee must notify the mayor as soon as possible. (*Id.* at 28). In addition, the Personnel Handbook states that medical certification, by a qualified health care provider, of the need for FMLA leave for medical reasons must be provided, within 15 calendar days of the employee's departure, unless it is not practicable to do so despite the employee's good faith efforts. However, if notice is provided more than 15 days after, the employee must provide a reasonable explanation for the delay, along with the certification. (*Id.* at 29).

At all relevant times, Charles Gilchrist served as Mayor of the City of Glencoe, Alabama. (Doc. 1 at ¶¶ 8-9; Doc. 6, Gilchrist Answer, at ¶¶ 4, 8; Doc. 7, Glencoe

Answer, at ¶¶ 4, 8).  Plaintiff was initially elected by the Glencoe City Council to serve as city clerk for a four-year term in 2004.  (Doc. 1 at ¶¶ 9, 25; Doc. 6 at ¶ 4; Doc. 7 at ¶ 4; Doc. 28-1, Casey Depo., at 64).  Plaintiff was elected to a second four-year term as city clerk in 2008.  (Doc. 28-1, Casey Depo., at 64).  Plaintiff's second term as city clerk expired in November 2012.  (*Id.*).  Plaintiff retained her position as city clerk with full pay and full benefits until the expiration of her second term, when the Glencoe City Council voted to elect Tashia Blackerby as city clerk.  (Doc. 28-2, Blackerby Aff., at ¶ 3).

As city clerk, plaintiff worked at Glencoe City Hall.  (Doc. 28-1, Casey Depo., at 36).  During plaintiff's tenure as city clerk, the City of Glencoe employed between 30 and 40 employees.  (*Id.* at 35).  However, at no time relevant to this action did the City of Glencoe have as many as 50 employees working at Glencoe City Hall or within 75 miles of Glencoe City Hall.  (Doc. 28-2, Blackerby Aff., at ¶ 5).[1]

While serving as city clerk, plaintiff suffered "illness, family bereavement and repeated hospitalizations."  (Doc. 1 at ¶ 23).  She was first hospitalized in 2009.  (Doc. 28-1, Casey Depo. at 66-67).  She was admitted to UAB Hospital in 2011.  (*Id.* at 70-71).  She underwent three surgical procedures in July 2012 and was absent from

---

[1] Ms. Blackerby attests to this evidence as city clerk for the City of Glencoe, as custodian of records for the City of Glencoe, and based upon her review of payroll records for the City of Glencoe.  (Doc. 28-2, Blackerby Aff., at ¶¶ 2, 5).

work. (*Id.* at 85-87). Plaintiff testified that she has migraine headaches, depression and anxiety. (*Id.* at 108). Her father passed away on September 17, 2012. (*Id.* at 124). However, plaintiff never submitted either a written notice of the need to be absent for FMLA purposes or medical certification of the need for FMLA leave. (*Id.* at 65). Plaintiff has been aware of the FMLA since at least 2008. (*Id.* at 100-02). However, plaintiff testified that she discussed the need to take some time off for medical reasons with Gilchrist after she returned to work and at other times thereafter. (*Id.* at 79, 82, 85, 88-91, 93, 97, 113, 118-20, 132).

Plaintiff received a performance evaluation dated February 16, 2009, in which she received a score of 80 out of 100, indicating she met standards. It was recommended that plaintiff work on her accuracy, co-worker relations and computer skills, and she received a raise. (Doc. 33-2 at 5-6). A performance evaluation dated February 11, 2011, shows that plaintiff exceeded standards, and she was given a raise. However, Gilchrist stated he was concerned about plaintiff's health but that he had no complaints about her job performance. (Doc. 33-2 at 7-8). At plaintiff's next performance evaluation, dated February 8, 2012, Gilchrist gave her a score of 70 out of 100, indicating she met standards, and gave her a raise. The evaluation decreased her scores in quality and quantity of her work as compared to previous evaluations, and Gilchrist noted plaintiff was "late alots" and "out a good bit" and he sometimes

wondered if her mind was on doing a good job. He recommended that plaintiff arrive for work on time, take less time away from the job, let Gilchrist know when she was going to be off or leave early, and make her job a priority. (Doc. 33-2 at 9-10).

Plaintiff suffered a stroke on or about December 27, 2011. (Doc. 28-1, Casey Depo., at 74). She was hospitalized two or three days as a result of the stroke. (*Id.* at 76). She returned to work the same week. (*Id*. at 78). Plaintiff never specifically requested that the hospitalization be treated as FMLA leave. (*See* Doc. 1 at ¶ 23; Doc. 28-1, Casey Depo., at 95-96,100-02). When plaintiff returned to work in late December 2011, she requested two weeks off (from late December 2011 into mid-January 2012). (Doc. 28-1, Casey Depo., at 89). Specifically, she requested vacation leave, not FMLA leave. (*Id*. at 90). She advised Mayor Gilchrist that she wanted the vacation leave "to recover and try to gather myself." (*Id*. at 91). Plaintiff was advised by Mayor Gilchrist that the City of Glencoe could not handle plaintiff taking extended leave at that time because the assistant city clerk was already taking leave during that time frame. (*Id.*).

In mid-January 2012, plaintiff requested "to take a week off" for "health related" reasons. (*Id*. at 93). Plaintiff was advised that she could not take extended leave due to the assistant city clerk already being out on leave. (*Id*. at 93-94). Plaintiff claims FMLA interference because she was neither granted vacation leave

nor offered FMLA leave in December 2011 and January 2012. (*Id.* at 136-37). For some time following her stroke, plaintiff describes herself as "an emotional wreck." (*Id.* at 80-81). After a doctor's appointment at some time in January 2012, plaintiff was able to resume her normal work duties. (*Id*. at 81, 83).

On or about January 24, 2012, plaintiff received a negative job performance notice for failing to pay a city credit card bill in a timely fashion. (Doc. 1 at ¶ 15; Doc. 29-1, Notice of Corrective Action). The bill was due by December 28, 2011, the day after plaintiff had a stroke. (Doc. 29-1). Plaintiff contends that the tardy bill payment was due to her hospitalization in December 2011. "[G]etting written up for not doing something while you're in the hospital" is the basis for plaintiff's FMLA retaliation claim. (Doc. 28-1, Casey Depo., at 140). She also contends she was not reappointed to the city clerk position in retaliation for her attempts to take FMLA leave. (Doc. 33, Plaintiff's Brief, at 15-17).

After returning to work after her stroke, plaintiff missed single days of work from time to time for doctor appointments or when feeling bad. (Doc. 28-1, Casey Depo., at 71). Plaintiff would take a day off when she "was tired and needed time off." (*Id.* at 81-82). Her doctors did not recommend extended medical treatment of any kind. (*Id.* at 71). There was no mention of inpatient care (after being discharged from the hospital in December 2011 as stated above). (*Id*. at 72-73). Her doctors

recommended that she go about her normal activities, including work, "at a slower pace." (*Id.* at 72). Plaintiff recalls no doctor providing her with a work excuse or prescribing time off from work. (*Id*. at 73). The assistant city clerk returned from her extended leave on January 23, 2012. (Doc. 28-2, Blackerby Aff., at ¶ 11).

After the assistant city clerk returned to work, plaintiff was never again denied any requested leave. (Doc. 28-1, Casey Depo., at 95). Plaintiff's salary was never cut due to work absences of any kind. Plaintiff received her full salary and benefits during her entire tenure as city clerk. All of her leave was paid leave. (*Id.* at 95; Doc. 28-2, Blackerby Aff., at ¶ 3).

Elections occurred on August 12, 2012, and Gilchrist was up for re-election as mayor. Gilchrist's opponent in the election was Chris Hare, who had a family connection to plaintiff. Plaintiff's family supported Hare in the election. Plaintiff testified that Gilchrist "knew I had a family interest in [Hare] being elected as mayor." Gilchrist was re-elected as mayor. (Doc. 28-1, Casey Depo., at 149-51). However, plaintiff denies she ever campaigned against Gilchrist or was asked about the election. (*Id.* at 149-51). She testified that she was told by her brother, David Gorham, and Tim Langdale that Gilchrist said she had been let go because she campaigned against Gilchrist. (*Id.* at 149-53). Mr. Gorham has submitted an

affidavit in which he attests that he was told by Gilchrist that Gilchrist let plaintiff go because plaintiff and Gorham had campaigned against him, and Gilchrist did what he considered right for the City of Glencoe. (Doc. 33-2 at 14-15, Gorham Aff.).

On or about October 1, 2012, plaintiff was called to a meeting with Mayor Gilchrist and Councilman Danny Wagnon. (Doc. 28-1, Casey Depo., at 125-26). In the meeting, Gilchrist told plaintiff that she "was too emotional," that Gilchrist "was recommending that I [plaintiff] take my things and take administrative leave until the council would reappoint a city clerk or make all their appointments," and that Gilchrist "was not going to recommend that I [plaintiff] be reappointed because I [plaintiff] was too emotional"[2] and because of "the campaigning against me [Gilchrist]." (*Id*. at 125). The term "fired" was never used; the term "terminated" was never used; and plaintiff was advised that she could continue to do her job if she could do so without being overcome by her emotions. (*Id*. at 127-28). Following the conversation on October 1, 2012, plaintiff took her personal belongings, left city hall, and never returned. (*Id*. at 142). From October 1, 2012, until the end of her term as city clerk, plaintiff did not work, but received full pay and benefits. (*Id*. at 142-43).

---

[2] Plaintiff's father had recently passed away, and she was "struggling" with her duties as city clerk. (Doc. 28-1, Casey Depo., at 128).

On November 5, 2012, the Glencoe City Council voted to elect Tashia Blackerby as city clerk. (Doc. 28-2, Blackerby Aff., at ¶ 3). According to the affidavits of Johnny Chambers, Brent Lang, Wayne Farley, Danny Wagnon and Chris Sims (members of the Glencoe City Council), they voted for Blackerby because they thought she was the best person for the job, based on her educational background, work experience and demeanor. (Doc. 28-3; Doc. 28-4; Doc. 28-5; Doc. 28-6; Doc. 28-7). All deny knowing if plaintiff requested or needed FMLA leave, and all deny their vote for Blackerby was motivated by any request or need for such leave. (*Id.*). Danny Wagnon specifically states that plaintiff's work performance and office demeanor had deteriorated throughout 2012, that other employees had complained about plaintiff, and that he was aware plaintiff's family had supported Gilchrist's opponent while Wagnon had supported Gilchrist. (Doc. 28-6, Wagnon Aff., at ¶ 4).

Plaintiff is now disabled and receiving Social Security Disability benefits. (Doc. 28-1, Casey Depo., at 102). In her application for disability benefits, plaintiff asserted that she can no longer do the work of a city clerk and became disabled effective November 1, 2012, after she was not reappointed as city clerk. (*Id.* at 109). Plaintiff admits that she has been disabled since November 1, 2012, admits she can no longer do the job of city clerk, admits she has been unable to do the job since November 1, 2012, and admits that she is unable to return to work. (*Id*. at 108-09).

Page 12 of 17

However, she was able to perform her city clerk job duties after her doctor's appointment in January 2012 until November 1, 2012, despite being tired and needing some time off. (*Id.* at 81).

## DISCUSSION

### I.     FMLA Interference and Retaliation

The FMLA makes it illegal "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). A plaintiff claiming interference must demonstrate by a preponderance of the evidence that she was denied a benefit to which she was entitled. *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1273-74 (11th Cir. 2012). An "employer" for purposes of the FMLA includes any "public agency" such as the City of Glencoe. 29 U.S.C. § 2611(4)(iii).

The protections of the FMLA only apply if the plaintiff is an aggrieved "eligible employee." *See Pereda*, 666 F.3d at 1272; 29 U.S.C. § 2612(a)(1) (stating that only an "eligible employee" shall be entitled to FMLA leave); 29 U.S.C. § 2617(a)(1) (providing that an employer who violates § 2615 shall be liable in a civil action to any "eligible employee"). The FMLA defines the term "eligible employee" to exclude "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees

employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii).  Thus, in order for the FMLA to apply, the "employer(s) at issue must have at least 50 employees within a 75 mile radius of the worksite." *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1254 (11th Cir. 2004).  This "worksite requirement" is both a threshold jurisdictional issue and a required element of a plaintiff's claim.  *See Morrison v. Amway Corp.*, 323 F.3d 920, 923 (11th Cir. 2003).  Whether the worksite requirement is met is determined as of the date the employee gives notice of the need for leave.  29 C.F.R. § 825.110(e).

Thus, in order to demonstrate that the FMLA is applicable, plaintiff has the burden of showing that the City of Glencoe employed at least 50 employees at her work site or within 75 miles.  29 U.S.C. §§ 2611(2)(B)(ii) and 2612; 29 C.F.R. §§ 825.102, 825.104 and 825.108(d).  Plaintiff argues that "defendant offers no substantive evidence that the City of Glencoe did not meet the statutorily demonstrated requirement of a public agency that employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." (Doc. 33, Plaintiff's Brief, at 10).  However, the burden is on *plaintiff* to establish that the City of Glencoe employed at least 50 employees at her work site or within 75 miles thereof, not on the City of Glencoe to establish it did not.  Further, the deposition testimony of plaintiff and the affidavit testimony of

Tashia Blackerby establish that the City of Glencoe employed between 30 and 40 employees and that it never employed 50 employees at plaintiff's work site or within 75 miles of the site during the period relevant to this action. While plaintiff has described Ms. Blackerby's affidavit as "hearsay," the rules of evidence provide otherwise. *See* Fed.R.Evid. 602, 803(6); 902(4)(A). Therefore, plaintiff was not eligible for FMLA leave.

The Eleventh Circuit has held that an employee must actually qualify for FMLA leave in order to bring a claim of FMLA interference or retaliation. *Hurley v. Kent of Naples, Inc.,*, 746 F.3d 1161, 1166-67 (11th Cir. 2014). Because plaintiff has not brought forth evidence to create even a genuine issue of material fact as to whether she was an "eligible employee" entitled to FMLA leave, she cannot establish that defendant either interfered with her FMLA rights or retaliated against her for attempting to exercise FMLA rights.

**Mental and Emotional Distress**

Plaintiff claims that defendant is liable for mental and emotional distress. This cause of action was recognized by the Alabama Supreme Court in *American Road Serv. v. Inmon*, 394 So.2d 361 (Ala. 1980), and described as follows:

> one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable

> person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement, supra, at 78. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

*Id.* at 365. By definition, it is an intentional tort. However, a municipality such as the City of Glencoe cannot be liable for the tort of intentional infliction of mental or emotional distress. *See Ala. Code* § 11-47-190 ("No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty. . . ."). Further, in the report and recommendation on defendant Gilchrist's Motion for Judgment on the Pleadings, which was adopted and accepted by the district court, the undersigned found that plaintiff failed to state a claim for intentional infliction of emotional distress. *See* Doc. 25 at 6.

## CONCLUSION

Based on the foregoing, the court finds that there are no genuine issues of material fact and that defendant's Motion for Summary Judgment is due to be granted and this action dismissed with prejudice. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 31st day of March, 2016.

*[signature]*

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE